Michelle M. ZIMMERMAN,
Plaintiff-Appellant,

v.

The FOUNDATION OF THE FRENCH INTERNATIONAL SCHOOL RO-CHAMBEAU OF WASHINGTON; the Faculty Association of the French International School, Defendants-Appellees.

Michelle M. ZIMMERMAN,
Plaintiff-Appellee,

v.

The FOUNDATION OF THE FRENCH INTERNATIONAL SCHOOL RO-CHAMBEAU OF WASHINGTON, Defendant-Appellant,

and

The Faculty Association of the French International School, Defendant.

Michelle M. ZIMMERMAN,
Plaintiff-Appellee,

v.

The FACULTY ASSOCIATION OF THE FRENCH INTERNATIONAL SCHOOL, Defendant-Appellant,

and

The Foundation of the French International School Rochambeau of Washington, Defendant.

Nos. 87–1537 to 87–1539.

United States Court of Appeals, Fourth Circuit.

Argued July 28, 1987.

Decided Oct. 15, 1987.

John Anthony Briley, Washington, D.C., for plaintiff-appellant.

Debra Miller, Thomas Gies (Daniel M. Katz, Katz & Ranzman, Kathleen J. Raynsford, Crowell & Moring, Washington, D.C., on brief), for defendants-appellees.

Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Michelle Zimmerman appeals from the district court's grant of summary judgment in favor of her employer, the Foundation of the French International School Rochambeau of Washington (Foundation), and her collective bargaining representative, the Faculty Association of the French International School (Faculty Association), in her action for breach of a collective bargaining agreement and breach of the duty of fair representation. 29 U.S.C. § 185. In our view, a genuine issue of material fact exists as to whether the Faculty Association

breached its duty of fair representation by refusing in bad faith to pursue Zimmerman's grievance against the Foundation. We therefore reverse.

Since 1978, Zimmerman has been employed as a primary school teacher at the French International School Rochambeau of Washington, a private institution offering primary and secondary instruction in Bethesda, Maryland. The School educates its students in compliance with both French and American educational standards. Its students are therefore eligible to transfer to other institutions and matriculate at universities in both countries.

The Faculty Association has represented teachers at the School since 1979 for purposes of collective bargaining with the Foundation. When Zimmerman filed this suit in 1985, twenty-one of the thirty-six primary school teachers were members of the Faculty Association, thirty-eight of the forty-nine secondary school teachers were members. Zimmerman has not been a member since 1981. Non-member teachers, however, also are governed by the collective bargaining agreements the Faculty Association negotiates, but they have no right to vote on the agreements.

The Faculty Association and the Foundation executed collective bargaining agreements covering the years 1979–82 and 1982–85 that contained identical provisions classifying teachers' salaries into five categories (A, B, B', C, and D). Two categories are pertinent to this controversy. Category B' included "Teachers having a Bachelor of Arts degree or Bachelor of Science degree." Category C included "Teachers with a 'CAP instituteur/institutrice.'"[1] Category B' teachers received a higher salary than Category C teachers.

When she started teaching at the School in 1978, Zimmerman was classified as a Category C teacher. Although she received a bachelor of arts degree in early-childhood education in 1979, she remained in Category C. In early January 1985, Zimmerman met informally with the Director of the School, M. Rene Bernet, and discussed her classification. She argued that her bachelor of arts degree entitled her to be placed in Category B'. On March 13, Bernet informed Zimmerman that the School's Board of Directors had voted to reclassify her to B'. Two days later Zimmerman requested written confirmation of that decision, but the School did not respond. On March 18, the President of the Faculty Association, Kersten Colombant, informed Zimmerman that the Faculty Association would not support her request to be properly classified and compensated.

On March 21, Zimmerman proceeded with the informal grievance process provided in the collective bargaining agreement by meeting with Bernet.[2] Colombant accompanied her. During the meeting, Colombant stated that the Faculty Association did not support Zimmerman's claim and would not assist her.

On March 26, 1985, Zimmerman initiated the formal grievance process [3] by writing a

---

1. CAP is an acronym for "certificate of professional aptitude." It is the French certificate for a qualified teacher and is equivalent to a teaching license in this country.

2. Article six of the agreement governs grievance procedures. Section 6.3 provides:
 6.3 Informal process:
 A person with a grievance to which this procedure is applicable will first discuss it informally with the Director of the School and may be accompanied at this discussion by a member of the Faculty Association. The Director may also be accompanied by a person of his choice. The objective of this meeting is the informal resolution of the problem.

3. Section 6.4 provides:
 6.4 Formal Process:

6.4.1 Level one: If the grievance cannot be resolved at the informal discussion, the grievant may present to the Director his/her grievance in writing within five school days after the informal discussion.
6.4.2 Level two: If the grievance is not resolved by the response of the Director within the allotted time, the grievant may present the grievance, in writing, with a response to the Director's comments, if any, to the President of the Foundation....
6.4.3 Level three: If the grievance is not resolved by the response of the President of the Foundation or his designated representative within the allotted time, the Faculty Association, on the grievant's behalf, may file a notice of intention to submit the dispute to binding arbitration....

. . . . .

letter to Bernet. On April 15, the Faculty Association advised Bernet of its opposition to Zimmerman's grievance and threatened to file an unfair labor practice charge against the Foundation if it reclassified Zimmerman. On April 16, Bernet informed Zimmerman that he could not provide a written response on her grievance. Zimmerman then proceeded to level two of the formal grievance process by writing a letter to Herman Cohen, the President of the Foundation. In addition to presenting her grievance, she stated that the Faculty Association would soon begin negotiations on a new collective bargaining agreement (for the years 1985–88) and that she had learned the new agreement would contain provisions intended to discriminate against her. On May 23, Bernet informed Zimmerman that although the Foundation's legal counsel had advised that her grievance was valid, the Foundation wanted the Faculty Association to be involved in its resolution for procedural reasons, *i.e.*, to prevent a possible unfair labor practice charge by the Association. Zimmerman then formally requested the Faculty Association's assistance. Colombant responded that the Faculty Association had requested copies of Zimmerman's previous correspondence with the Foundation and stated that "[w]hen we have received all the correspondence ... we will get back to you about the appropriate action to be taken...."

On June 20, Zimmerman attended a meeting with School Director Bernet and Colombant. At the meeting, Colombant expressed her opinion that it would be unfair to other primary school teachers if the Foundation reclassified Zimmerman on the basis of her bachelor of arts degree. She added, however, that the Faculty Association was waiting to see what position the Foundation would adopt. The meeting end-ed without resolving Zimmerman's grievance and the School closed on the following day for summer recess.

After the School reopened in the Fall of 1985, Zimmerman resumed her efforts to have her grievance resolved. On October 14, she petitioned the Faculty Association to take the appropriate steps to submit the dispute to arbitration on her behalf and thus invoke the level three grievance procedure. The Association formally denied her request. Zimmerman then filed this action against the Foundation and the Faculty Association.

In her complaint, Zimmerman alleged that the Foundation breached the collective bargaining agreement by not reclassifying her to Category B' after she received a bachelor of arts degree. She also claimed that the Faculty Association breached its duty of fair representation by refusing in bad faith to pursue her grievance, and that the Foundation and the Faculty Association unfairly discriminated against her by changing the salary-classification terms in a new collective bargaining agreement negotiated after she filed her grievance. The Foundation and the Faculty Association moved for summary judgment, supported by affidavits from Colombant, and Zimmerman filed affidavits in opposition to the motion.

As set forth in Colombant's affidavits, the Faculty Association's position was that Zimmerman had no contractual right to be reclassified to Category B'. It maintained that a primary school teacher may never advance beyond Category C, regardless of academic degree. In its view, the agreement, the Foundation's consistent past practices, and principles of the French educational system all restricted primary school "classroom" teachers to Category C status or below. The district court accept-

---

The Foundation shall provide written notification to the Faculty Association of any grievance the Foundation may have within fifteen days after the cause therefor has become known, or should have become known, to the aggrieved party, except that in no case may any grievance be filed more than two months after the cause therefor has occurred.

A meeting will take place between two representatives of the Faculty Association and two representatives of the Foundation within fifteen days of notification of the grievance. A good faith effort will be made at that meeting to resolve the dispute.

If the Faculty Association fails to respond by its presence at the meeting, or if the grievance is not resolved at the meeting the Foundation may submit the dispute to binding arbitration under the procedures outlined above.

ed this explanation as providing a "reasonable basis" for the Faculty Association's refusal to arbitrate Zimmerman's grievance. Acknowledging that unions retain "considerable latitude in their handling of the grievance process," the court held that the Faculty Association was therefore entitled to summary judgment on Zimmerman's breach of fair representation claim. The district court consequently also granted the Foundation's motion for summary judgment. This appeal followed.

In our view, there is clearly a legal question as to whether the 1982–85 agreement governing this dispute required the Foundation to reclassify Zimmerman after she obtained a bachelor of arts degree. That is not the issue on this appeal, however. The district court did not pass on the merits of Zimmerman's contract claim against the Foundation. Its grant of summary judgment was based on its view that the Faculty Association had not breached its duty to provide Zimmerman fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Our inquiry, therefore, is directed to whether a genuine issue of material fact exists as to whether the Faculty Association represented Zimmerman fairly on her claim against the Foundation.

 In determining whether the court properly granted summary judgment, however, we cannot ignore the contractual question entirely. The arguable merit to a grievance is one factor in considering whether a union acted in bad faith in refusing to represent an employee. *See id.* 386 U.S. at 191, 87 S.Ct. at 917 ("a union may not arbitrarily ignore a meritorious grievance"); *Harrison v. United Transportation Union*, 530 F.2d 558, 561 (4th Cir.1975), *cert. denied*, 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). Here, the parties dispute the correct interpretation of the collective bargaining agreement. The Faculty Association relies on several provisions of the agreement, past practices, and principles of the French educational system to support its interpretation. An initial difficulty with its position, however, is that the agreement does not refer to the

Foundation's past practices or to the French educational system. Only Colombant avers that the negotiating parties had those practices and principles in mind when they negotiated the agreement. In contrast, Zimmerman characterizes this argument as a "manufactured excuse."

Considered in isolation, the agreement arguably supports Zimmerman's interpretation. Section 2.1 of the agreement provides that a teacher "will be hired in the highest category in accordance with the degrees he/she holds in the subjects he/she teaches at the [School]." It further defines Category B' to include "Teachers having a B.A. or B.S." Zimmerman obviously meets this requirement. Section 3, which governs teachers' salaries, provides that "The salary of each teacher is determined according to his degrees and the number of years he/she has taught at the school and the number of hours taught." Section 3.6 contains a table of the teachers' annual salaries for each category defined in Section 2.1, and restates the academic qualifications a teacher must possess for each category. No other pay qualifications are listed. Neither Section 2.1 nor Section 3 distinguishes between primary and secondary school teachers. The plain language of these provisions appear, therefore, to contemplate that *any* teacher with a bachelor of arts degree will be classified in Category B'.

The Faculty Association contends, however, that we must also examine the provisions governing workload. Section 2.2, entitled "Secondary school work and duties," provides, *inter alia*, that Category B' secondary school teachers shall work a total of twenty-one classroom hours per week. Section 2.3, entitled "Work load and duties of Primary school teachers," requires all primary school teachers to work twenty-seven hours per week. The Faculty Association argues that these workload distinctions evince the contracting parties' intent that primary school "classroom" teachers be treated differently than secondary

school "subject matter" teachers with respect to salary classification.[4]

The Faculty Association's position is a strained construction of the agreement. Moreover, neither the School's Director, its governing body, nor its legal counsel initially construed the agreement as creating a secondary/primary dichotomy. According to Zimmerman, all of them had agreed that her bachelor of arts degree entitled her to be reclassified in Category B'—before the Faculty Association stated its position on the question. From the terms of the agreement and the Foundation's initial responses to Zimmerman, we conclude that her grievance was at least arguably meritorious.

In *Harrison v. United Transportation Union*, this court held that the failure to process an arguably meritorious grievance is evidence of bad faith sufficient to overcome a union's motion for a directed verdict in a breach of fair representation action. 530 F.2d at 561–62. That decision likewise applies to a union's motion for summary judgment—especially when, as here, the employee avers additional facts that create an inference of bad faith. *See Local 13, International Longshoremen's & Warehousemen's Union v. Pacific Maritime Association*, 441 F.2d 1061, 1068 (9th Cir.1971), *cert. denied*, 404 U.S. 1016, 92 S.Ct. 677, 30 L.Ed.2d 664 (1972). According to Zimmerman's affidavits, the Foundation was prepared to reclassify her until the Faculty Association threatened to file an unfair labor practice charge against the Foundation if it did so. *See Williams v. Teamsters Local Union No. 984*, 625 F.2d 138 (6th Cir.1980) (union's failure to process grievance that employer had not disputed was arbitrary). Moreover, Zimmer-

man was not a member of the Faculty Association, and the Faculty Association's President was a principal beneficiary of the policy allowing higher classification (and consequently a higher salary) to certain teachers in the primary school. Finally, a decision upholding Zimmerman's interpretation of the agreement would have benefitted not only Zimmerman, but other teachers. The 1985 collective bargaining agreement, however, which was negotiated while Zimmerman's grievance was pending, included a provision that explicitly limited all primary school "classroom" teachers to Categories C and D. That the Faculty Association would insist on a provision that benefitted no member, but could disadvantage a number might at least arouse a factfinder's curiosity as to the Association's good faith.

We, of course, express no opinion on the ultimate probative effect of the evidence that the parties aver will be presented at trial. In our view, however, the complaint and affidavit evidence present genuine issues of material fact as to whether the Faculty Association fairly represented Zimmerman. The judgment of the district court is therefore reversed.[5]

REVERSED.

---

4. The Faculty Association also argues that a contractual note to Section 2.3, which authorizes primary school English and gym teachers to be treated as secondary school teachers with respect to the work week, negates the possibility of any other primary school teachers being considered as "secondary" teachers for category classification purposes. We note that according to Zimmerman's uncontroverted affidavits, Colombant was one of only two teachers who benefitted from this contractual note.

5. The district court denied the Foundation's and Faculty Association's requests that sanctions be imposed against Zimmerman under Rule 11 of the Federal Rules of Civil Procedure. The Foundation and Faculty Association appeal that denial and have also moved for sanctions under Rule 38 of the Federal Rules of Appellate Procedure. In view of our decision reversing the grant of summary judgment, we affirm the district court's denial of Rule 11 sanctions against Zimmerman and, of course, decline to impose sanctions against her under Rule 38.